UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Safeco Insurance Company of America, a Washington State Corporation,

Civil No. 08-5928 (DWF/JJG)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

Richard Knutson, Inc., a Minnesota Corporation; Richard C. Knutson Estate/Trust, a Minnesota Estate/Trust; Patricia J. Thompson, a Minnesota citizen; Mark E. Thompson, a Minnesota citizen; The Richard C. Knutson Estate, a Florida estate; The Richard C. Knutson Trust, a Minnesota trust; and Linda Knutson, a Minnesota citizen,

Defendants,

and

Linda Knutson, a Minnesota citizen,

Intervenor Defendant and Cross-Claimant,

v.

Mark E. Thompson, a Minnesota citizen; and Patricia J. Thompson, a Minnesota citizen,

Cross-Defendants.

---

Shushanie E. Kindseth, Esq., and Thomas J. Radio, Esq., Hinshaw & Culbertson LLP, counsel for Plaintiff.

Steve L. Bergeson, Esq., Tuttle Bergeson, P.A., counsel for Non-moving Defendants.[1]

Christopher M. Daniels, Esq., and David J. Wymore, Esq., Daniels & Wymore, PLLC, counsel for Moving Defendants The Richard C. Knutson Trust and Linda Knutson.

## INTRODUCTION

This matter is before the Court pursuant to Cross-Motions for Summary Judgment brought by Plaintiff Safeco Insurance Company of America ("Safeco") and Moving Defendants The Richard C. Knutson Trust (the "Trust") and Linda Knutson. For the reasons set forth below, Safeco's motion is granted, and the Trust and Linda Knutson's motion is denied.

## BACKGROUND

Safeco is in the business of issuing surety bonds guaranteeing performance and payment obligations. Safeco issued payment and performance bonds (the "Bonds") to secure Richard Knutson, Inc.'s ("RKI") obligations under construction project contracts. (Am. Aff. of David Pikulin ("Pikulin Aff.") ¶¶ 2-3, Ex. A.) RKI was in the business of new ground excavation, utilities, and earth moving. "In consideration of the execution of any such Bonds," RKI, the Trust, Linda Knutson, Defendants Richard C. Knutson Estate/Trust (the "Estate/Trust"), Patricia J. Thompson, Mark E. Thompson, and The Richard C. Knutson Estate (the "Estate") (collectively, the "Indemnitors") executed a

---

[1] The Non-moving Defendants are Richard Knutson, Inc.; The Richard C. Knutson Estate/Trust; Patricia J. Thompson; Mark E. Thompson; and the Richard C. Knutson Estate.

2

General Agreement of Indemnity for Contractors (the "Indemnity Agreement") in favor of Safeco on June 2, 2004. (Pikulin Aff. ¶ 4, Ex. B.) In the Indemnity Agreement, the Indemnitors agreed to indemnify Safeco for all loss, costs, and expenses incurred by Safeco from executing the Bonds. (*Id.* ¶¶ 6-8, Ex. B.)

The Indemnity Agreement provides in part:

INDEMINITY TO SURETY: Undersigned agree to pay Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs and reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

    In addition, the Undersigned agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
3. Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.
3. Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.

> 4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

(*Id.*, Ex. B.)

Richard Knutson was the President of RKI until his death in 2003. At the time of his death, he had three living children: Patricia Thompson, Bill Knutson, and Lori Knutson.[2] Patricia Thompson is married to Mark Thompson, and Bill Knutson was married to Linda Knutson. Richard's children each received one-third ownership in RKI, but only Patricia Thompson and Bill Knutson had voting shares. Bill Knutson's interest in RKI passed to Linda Knutson after his death in 2006.

Until Richard Knutson passed away in 2003, Mark Thompson acted as Vice President of RKI. Then, Mark Thompson was President, and Patricia Thompson became the Vice President. Later Mark and Patricia Thompson traded roles, and Patricia became President and Mark became Vice President. Bill Knutson was employed by RKI since he was a teenager and sat on the Board of Directors from 2003 until his death in 2006.[3]

After Bill died, Mark and Patricia Thompson were the only RKI board members. RKI had financial difficulty and is now in bankruptcy. RKI failed to perform under some projects bonded by Safeco. (Safeco's Motion for Summary Judgment at 4.) As a result

---

[2]   Lori Knutson did not sign the Indemnity Agreement and is not a party to this lawsuit.

[3]   Linda Knutson argues that she and Bill kept their finances separate and that Bill was a union worker who was laid off from RKI each winter and could not be an officer at RKI. She also asserts that she and Bill never received any profit from RKI.

of RKI's failure to perform, Safeco paid $975,289.16 to discharge obligations under the Bonds. (Pikulin Aff. ¶¶ 10-12, Ex. C.) Safeco notified the Indemnitors of the expenditures and requested indemnification. (*Id*. ¶ 13.) The Indemnitors have not reimbursed Safeco. (*Id.*)

In March 2008, all of the Indemnitors except Linda Knutson signed reaffirmation and forbearance agreements, a promissory note, and a confession of judgment (together, the "2008 Agreements") related to their obligation to indemnify Safeco.[4] Even after signing the 2008 Agreements, the Indemnitors failed to indemnify Safeco.

Safeco filed this suit in September 2009, alleging breaches of the 2004 Indemnity Agreement and 2008 confession of judgment. Safeco later amended its complaint to add causes of action for exoneration, *quia timet*, and specific performance. Safeco now moves for summary judgment on the breach of the Indemnity Agreement, and seeks exoneration, *quia timet*, and specific performance.

Linda Knutson and the Trust oppose Safeco's motion[5] and move for summary judgment on all claims against them. The Trust and Linda Knutson seek summary judgment on invalidity of the Indemnity Agreement due to lack of consideration. Linda Knutson also moves for summary judgment that her duties under the Indemnity

---

[4] Safeco did not sign the 2008 Agreements.

[5] The Non-moving Defendants do not oppose the motions for summary judgment. They did not file an opposition to the motions. Also, their counsel was present at the hearing on the motions but did not oppose them. RKI, the Estate, and the Estate/Trust did file their own motions for summary judgment, but they were stricken from the record because corresponding memoranda of law were not filed. (Docs. 118, 119, and 136.)

5

Agreement were discharged because of changes at RKI since she signed the Indemnification Agreement and modifications to the Indemnity Agreement by the 2008 Agreements. The Trust additionally moves for summary judgment on violation of Minn. Stat. § 501B.154.

## DISCUSSION

**I.     Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Liability

Safeco asserts that Indemnitors failed to indemnify Safeco for payments made on the Bonds as required by the Indemnity Agreement. Safeco therefore asserts that Indemnitors breached the Indemnity Agreement and that the Court should enter judgment in favor of Safeco and against Indemnitors in the amount of $975,289.16, together with attorney fees and costs for bringing this motion. Safeco argues that there are no genuine issues of material fact regarding the Indemnitors' breach under the Indemnity Agreement.

There is no dispute that the Indemnitors signed the Indemnity Agreement[6] and that its terms are clear and unambiguous. There is also no dispute that the agreement requires the Indemnitors to indemnify Safeco for payments made on the Bonds. Further, there is no dispute that Safeco has made payments on the Bonds and that the Indemnitors have not indemnified Safeco for those expenditures. While the Indemnitors do not deny that they failed to indemnify Safeco as required under the Indemnity Agreement, Linda

---

[6]     Linda Knutson and the Trust argue that there is a factual dispute as to whether Mark Thompson signed the Indemnity Agreement on behalf of the Estate/Trust. (Supp. Aff. Wymore ¶ 2, Ex. L.) However, Patricia Thompson testified that she signed the Indemnity Agreement in her individual capacity and on behalf of the Trust. (P. Knutson Dep. Tr. at 29:15-30:25.) Because it is undisputed that Patricia Thompson had the authority to bind the Trust, the Court concludes that whether Mark Thompson intended to bind the Trust does not create a genuine issue of material fact. For the same reason, the Court need not consider Safeco's assertion of the doctrine of equitable estoppel.

Linda Knutson also alleges that she did not read and understand the entire Indemnity Agreement before signing it. She does admit, however, that she signed the agreement.

Knutson and the Trust assert that summary judgment is not appropriate because (1) they did not receive consideration under the Indemnity Agreement; (2) changes at RKI after execution of the Indemnity Agreement release Linda Knutson's duty to indemnify; (3) modifications to the agreement by the execution of the 2008 Agreements discharge Linda Knutson's duty to indemnify; and (4) the Trust is not bound because the Indemnity Agreement and the 2008 Agreements violate Minn. Stat. § 501B.154(c).

First, Linda Knutson and the Trust argue that the Indemnity Agreement is invalid because they did not receive consideration for their signatures.[7] In Minnesota, the existence of consideration is a matter of law for the court. *Brooksbank v. Anderson*, 586 N.W.2d 789, 794 (Minn. Ct. App. 1998). "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party" and "need not pass from the promisee to the promisor to be valid." *C&D Invs. v. Beaudoin*, 364 N.W.2d 850, 853 (Minn. Ct. App. 1985). The Court concludes that the record demonstrates that the Agreement is supported by consideration. Safeco agreed to issue bonds in favor of RKI to Safeco's detriment. In exchange, the Indemnitors agreed to indemnify Safeco for expenses and costs incurred as the result of executing the Bonds. (Pikulin Aff., Ex. B.) Therefore, the Court finds that there are no genuine issues of material fact regarding whether the Indemnity Agreement had adequate consideration. Accordingly, the Court

---

[7] The Trust similarly argues that it did not receive consideration for the 2008 Agreements. The Court denies the Trust's motion for summary judgment on this issue with respect to the 2008 Agreements for the same reasons it denies the motion with respect to the Indemnity Agreement. The Trust and Linda Knutson also assert that Safeco did not rely on their signatures when issuing the Bonds. However, reliance is not an element of consideration.

denies Linda Knutson and the Trust's motion for summary judgment on the absence of consideration.

Second, Linda Knutson argues that she should be released from the Indemnity Agreement because of changes at RKI after she signed it in June 2004. She asserts that Patricia Thompson becoming an officer and the Thompsons becoming the sole members of the Board of Directors are sufficient changes at RKI to discharge her duties. Under Minnesota law, a change in the form or structure of the principal debtor resulting in "a material alteration in the contract between the principal and the creditor discharges a guarantor." *Loving & Assocs., Inc. v. Carothers*, 619 N.W.2d 782, 789 (Minn. App. 2000). "Courts agree that minimal changes do not affect a guarantor's obligation." *Id.* at 787. Whether changes affect a guarantor's obligations depends on whether the change (1) results in a new principal and (2) materially alters the nature of the performance required by the guarantor. *Id.* at 788. The Court agrees with Safeco that the changes within RKI after June 2004 were minimal and did not discharge Linda Knutson's obligations under the Indemnity Agreement. The changes did not result in a new principal, and the nature of Linda Knutson's required performance--to indemnify Safeco if it pays on the Bonds--is not materially affected by the changes. The Court therefore concludes that the changes at RKI did not discharge Linda Knutson's duties as a matter of law and denies Linda Knutson's motion for summary judgment on this issue.

Third, relying on the Restatement of Security,[8] Linda Knutson argues that the 2008 promissory note, consent of judgment, reaffirmation agreement, and forbearance agreement signed by the other Indemnitors without her consent release her from liability. Linda Knutson alleges that the Indemnity Agreement was superseded by stricter obligations of the 2008 Agreements and that she should therefore be released from the Indemnity Agreement. Linda Knutson describes the changes to the Indemnity Agreement as "radical." However, the Court notes that Linda Knutson has not pointed to a single clause in any of the 2008 Agreements that modifies, let alone enlarges the scope of, Linda Knutson's obligations. In fact, the confession of judgment, reaffirmation agreement, and forbearance agreement specifically refer to and attach the Indemnity Agreement and state that they do not modify the Indemnity Agreement. (Affidavit of David J. Wymore ("Wymore Aff.") ¶¶ 9, 11-12, Exs. H, J-K.) For example, the Reaffirmation Agreement states in part:

> 2. Nothing contained in this Agreement and done pursuant hereto shall in any way impair, alter or modify any and/or all of the rights and remedies

---

[8] Linda Knutson cites Section 129 of the Restatement of Security in her memorandum in support of her motion; however, it appears to the Court that Section 128 is more on point. Section 129 considers extensions of time of payments by the principal, which Linda Knutson does not allege, and Section 128 covers modifications of principal's duty other than the extension of time. Section 128 provides in part: "Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment (a) the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety, . . ." The Court need not decide whether the Restatement of Security applies under Minnesota law since it concludes that the 2008 Agreements do not modify the Indemnity Agreement.

>     of Safeco against Principal and/or the Indemnitors under or in connection
>     with the Indemnity Agreement.
>
>     . . . .
>
>     9.    The terms and provisions of the Indemnity Agreement shall remain
>           in full force and effect. Nothing contained in this Agreement shall in
>           any way prejudice or waive the legal and equitable rights of
>           subrogation of Safeco . . . .

(Wymore Aff. ¶ 11, Ex. J.)

Rather, the 2008 Agreements acknowledge and reaffirm the Indemnitors' liability to Safeco under the Indemnity Agreement. For example, the Reaffirmation Agreement states in part:

>     WHEREAS, Principal and the Indemnitors hereby acknowledge
>     their execution of the Indemnity Agreement and reaffirm their joint and
>     several obligations and liabilities to Safeco thereunder;
>
>     . . . .
>
>     WHEREAS, in order to specifically perform their obligations and
>     duties to Safeco under the Indemnity Agreement and the Bonds, Principal
>     and Indemnitors are willing to execute this Agreement; . . .

(Wymore Aff. ¶ 11, Ex. J.)

Indeed the Court concludes that the 2008 Agreements do not modify the Indemnity Agreement as a matter of law. Accordingly, the Court denies Linda Knutson's motion as to this issue.

Fourth, the Trust argues that it is not bound to the Indemnity Agreement or the 2008 documents because they violate Minnesota Statute § 501B.154. That statute is entitled "Nonjudicial Settlement Agreements" and provides in part:

> (a) The trustee and all beneficiaries of a trust not under court supervision may enter into a binding nonjudicial settlement agreement with respect to the matters listed in paragraph (c).
>
> (b) A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust, subject to paragraph (c), clause (5), and includes terms and conditions that could be properly approved by the court under applicable law.
>
> (c) Matters that may be resolved by nonjudicial settlement agreement are:
>
> (1) the approval of a trustee's accounting;
>
> (2) the resignation of a trustee;
>
> (3) the determination of a trustee's compensation;
>
> (4) the transfer of the trust's situs; and
>
> (5) the termination of a noncharitable trust and distribution of the trust property. . . .

Minn. Stat. § 501B.154.

The Trust argues that the Indemnity Agreement and the 2008 Agreements are not proper subject matter for a nonjudicial settlement agreement under the statute. The Trust also argues that the Trust is not bound by the agreements because Lori Knutson, a beneficiary of the Trust, did not sign the documents as required by the statute. The Court finds that Minn. Stat. § 501B.154(c) is inapplicable because the Indemnity Agreement and the 2008 Agreements are not nonjudicial settlement agreements. Rather, the Indemnity Agreement is a contract obligating the Indemnitors to indemnify Safeco, and the 2008 Agreements merely acknowledge and reaffirm the Indemnitors' duties under the Indemnity Agreement. The Trust's motion is denied in this regard.

In sum, the Court concludes that there are no genuine issues of material fact remaining and that Indemnitors have breached the Indemnity Agreement as a matter of law. Therefore, summary judgment is appropriate and will be granted on the issue of liability.

### III. Damages

The Indemnity Agreement provides that in the event of a default, the Indemnitors must reimburse Safeco for "[a]ll loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees," and interest. (Pikulin Aff. ¶¶ 6-8, Ex. B.) In addition, the Indemnity Agreement provides that "[a]n itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned." (*Id.*) The Court concludes that Safeco is entitled to recover both damages in the amount of the unpaid balance, plus interest and attorney fees and costs. While Safeco has submitted affidavit evidence of its damages, the issue of the appropriate amount of damages has not been sufficiently briefed by the parties. Therefore, the Court respectfully requests that the parties submit limited briefing (a maximum of five pages per party) on the issue of appropriate damages and attorney fees. Additionally, the Court respectfully requests that the parties submit limited briefing (an additional maximum of three pages per party) on the status of the case and remaining issues in light of this order. The Court directs the parties to agree on a suitable briefing schedule and to communicate the schedule to the Court by letter within ten days of this

order. The Court reserves the right to set an oral argument or evidentiary hearing on the issue of damages.

Thus, **IT IS HEREBY ORDERED**:

1. Safeco's Amended Motion for Summary Judgment (Doc. No. [122]) is **GRANTED** as to liability.

2. Linda Knutson's and The Richard C. Knutson Trust's Amended Motion for Summary Judgment (Doc. No. [129]) is **DENIED**.

3. The parties shall submit briefing on damages and case status consistent with this Order.

Dated: May 25, 2010             s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge